200 N.J. Super. 84 (1985)
490 A.2d 357
ROYAL ASSOCIATES, PLAINTIFF-RESPONDENT,
v.
KEVIN CONCANNON AND THORA CONCANNON, HUSBAND AND WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 11, 1985.
Decided March 27, 1985.
*87 Before Judges McELROY, DREIER and SHEBELL.
Ronald Schwartz attorney for appellants (Ronald Schwartz, on the brief).
Rudolph J. Wenzel, Jr. attorney for respondent (Rudolph Wenzel, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff instituted this summary dispossess action against defendants alleging a violation of N.J.S.A. 2A:18-61.1(i) a failure to accept a landlord's reasonable change of substance in the terms and conditions upon the renewal of a lease. This action was filed in the Bergen County District Court on November 28, 1983 and was continued in the Special Civil Part of the Superior Court, Bergen County, after the abolition of the County District Court on December 30, 1983. See N.J.S.A. 2A:4-3a. Jurisdiction *88 of the County District Court was transferred to the Superior Court as of that date. N.J.S.A. 2A:4-3c.
Defendants have appealed from the summary dispossess order entered in the Superior Court. Plaintiff alleges that after due notice defendants were required to accept an effective lease provision prohibiting pets in their apartment. In fact, such a provision had been included in defendants' lease for the fourteen years that they had been in residence. The landlord gave notice that with the renewal of the lease the clause was to be enforced, requiring that defendants either give up possession of their dog in the apartment or move. Plaintiff further contends that a "no pets" provision was reasonable and specifically authorized by Terhune Courts v. Sgambati, 163 N.J. Super. 218 (Cty D.Ct. 1978), aff'd o.b. 170 N.J. Super. 477 (App.Div. 1979), certif. den. 84 N.J. 418 (1980). We need not directly address the effect of Terhune Courts, since we find the facts in the instant case to be distinguishable. We reverse the judgment for possession granted below.
Defendants initially occupied their apartment under a two year written lease from May 1, 1971 to April 30, 1973. This lease contained a provision prohibiting pets on the premises. When they moved in there were no dogs on the premises, but they noted that other tenants acquired dogs between 1971 and 1973. In December of 1973 defendants decided to purchase a dog for protection, after noting a number of break-ins in the apartment complex and due to the fact that defendant Kevin Concannon often worked at night leaving his wife home alone. Before purchasing the dog, however, Mr. Concannon telephoned Mr. Hamilton, the owner and operator of Royal Associates, and requested permission to purchase the dog. Defendant testified that Mr. Hamilton told him that since defendants were such good tenants they could have a dog so long as they took care of it and kept it on a leash. Further, he was told he could keep the dog for as long a period of time as he maintained it, but with no more specific comment as to duration. For the period in excess of ten years that they have had their dog, defendants *89 received no complaints from management or from any other tenants regarding their dog.
Mr. Hamilton testified that defendants were one of four or five tenants to whom he had given what he called "special permission" to have a dog for as long a period of time as they controlled the dog. No permanent term or duration, however, had been established. He admitted he had never seen defendants walking their dog without a leash and did not contest defendants' assertion that they fully complied with plaintiff's conditions regarding ownership of the dog.
Through successive two year leases, plaintiff did nothing to enforce the "no pets" provision. On June 2, 1982, however, defendants received a letter addressed to all tenants in the apartments indicating that there was a problem with dogs in the complex and that all tenants would be required to get rid of their dogs. The same letter, however, contained a statement that "only people who had special permission to own a dog will be allowed to stay." Defendants later learned that dispossess actions had been commenced against other pet owners in the complex, but not against them, and no further word was received concerning the issue until May 1983 when defendants' lease was renewable. The proposed lease from plaintiff contained not only the "no pets" provision but a Rider wherein all tenants who still owned dogs specifically agreed to get rid of them by a specified date. Believing that this Rider did not apply to them because of their special permission, Mr. Concannon went to plaintiff's office in April 1983 and indicated to Mr. Hamilton that he would not sign the Rider in view of their specific agreement to the contrary, i.e., that defendants could keep their dog as long as they controlled it. Plaintiff and defendants then signed the lease without the Rider, Mr. Hamilton commenting that since the "no pets" provision was in the lease and defendants had been informed of his change in policy, the absence of the Rider would make no difference.
*90 On June 28, 1983 plaintiff served a Notice to Cease upon defendants as required by N.J.S.A. 2A:18-61.2 and then served a Notice to Quit on September 27, 1983. During the interim period defendants paid their rent monthly as required and each payment was accepted by plaintiff. Cf. Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 129 (1967), holding that the acceptance of rents after a Notice to Terminate constitutes a waiver as a matter of law; see also Jasontown Apartments v. Lynch, 155 N.J. Super. 254, 263 (App.Div. 1978).
Terhune Courts v. Sgambati held that each successive lease was a new contract between landlord and tenant, creating a "new and separate tenancy ... with new and separate rights and obligations. Covenants as to past tenancy have no bearing on a new leasehold." 163 N.J. Super. at 222. In the abstract, this court has noted, in dictum, that a covenant forbidding dogs in a leased apartment is reasonable. Housing Auth., Atlantic City v. Coppock, 136 N.J. Super. 432, 435 (App.Div. 1975). In that case, however, the only issue properly before the Appellate Division was one of jurisdiction, pursuant to the "no appeals" provision of N.J.S.A. 2A:18-59.
The cases throughout the country dealing with this issue have been collected in an Annotation, "Relative rights and liabilities as between landlord and tenant with respect to keeping dogs, birds or other pets." 18 A.L.R.2d 880 (1951), and later case service (1984). Enforcement is generally granted when a tenant first acquired the pet in derogation of a contrary lease provision and without permission of the landlord. Circumstances, however, may lead to a finding of waiver or estoppel, or the unenforceability of the prohibition based upon the special facts of the case.
Both the dictim in Housing Auth., Atlantic City v. Coppock and the decision in Terhune Courts fail to recognize the attachment that a tenant may feel towards a pet, and the fact that an apartment, whether occupied by a tenant under successive leases or on a month-to-month arrangement, becomes *91 the tenant's home. What is "reasonable" within the meaning of N.J.S.A. 2A:18-61.1(i) should be analyzed with a recognition that personal affinities towards both living quarters and pets should not be required to be sacrificed on the basis of a landlord's whim or caprice.
In this case, defendants made a separate agreement with plaintiff apart from the lease. On the strength of Mr. Hamilton's express permission to obtain and keep a dog, defendants expended $225 to purchase a purebred Afghan hound. This payment was a sufficient detriment to bind the landlord. Novack v. Cities Serv. Oil Co., 149 N.J. Super. 542, 549 (Law Div. 1977), aff'd o.b. 159 N.J. Super. 400 (App.Div. 1978). While it may be argued that the money spent for the dog did not constitute consideration, since the landlord obtained no benefit from defendant's purchase of the dog, we find that, by agreeing to the purchase, the landlord retained a satisfied tenant, inferentially a benefit to plaintiff from defendants' expenditure.
A stronger basis for binding the landlord to such agreement is promissory estoppel. Promissory estoppel is applicable to in futuro promises where they relate to an intended abandonment of an existing right or are made to influence others who, in fact, are induced thereby to act or to forbear. Friedman v. Tappan Development Corp., 22 N.J. 523, 537 (1956). A promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and which does induce such action or forbearance, is binding if injustice can be avoided only by enforcement of the promise. Id. at 538; Restatement, Contracts 2d, § 90. Given an appropriate case, the doctrine of promissory estoppel will be enforced. Malaker Corp. Stockholders Protective Committee v. First Jersey Nat. Bank, 163 N.J. Super. 463, 479 (App.Div. 1978), certif. den. 79 N.J. 488 (1979). The four separate factual elements must be proved prima facie to justify application of the doctrine of promissory estoppel: (1) clear and definite promise by the *92 promisor; (2) promise must be made with expectation that promisee will rely thereon; (3) promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise. Id. at 479; E.A. Coronis Assoc. v. M. Gordon Construction Co., 90 N.J. Super. 69, 74-80 (App.Div. 1966). The essential justification for the doctrine is avoidance of substantial hardship or injustice were the promise not to be enforced. Malaker, 163 N.J. Super. at 484. All elements of such promissory estoppel have been made out by defendant, justifying enforcement of the agreement, even if no adequate consideration is found.
The Terhune Courts opinion stated:
[T]he equitable doctrines of waiver and estoppel do not apply to the instant facts. A landlord who has waived a covenant in the past may reassert that covenant as though it never existed in the first instance. This is possible only if the landlord complies with the requirements of N.J.S.A. 2A:18-61.1. Those requirements demand proper notice and that the change itself be reasonable. [163 N.J. Super. at 222].
Although Terhune Courts finds no basis for an estoppel or waiver because of the real property concepts of separate tenancies that exist under each new lease, the concept of equitable estoppel (similar to promissory estoppel) may in proper circumstances be broader. Equitable estoppel operates to prevent a party from disavowing its previous conduct if such repudiation would violate the demands of justice and good conscience. Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 (1979). Equitable estoppel can arise from any type of "conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive acts, and his silence or negative omission to do anything." State v. U.S. Steel Corp., 22 N.J. 341, 358 (1956), quoting from 3 Pomeroy on Equity Jurisprudence (5th ed. 1941) § 802. The acceptance of rental payments not only may waive prior breaches, as noted above in Carteret Properties v. Variety Donuts, Inc., 49 N.J. at 129, but viewing the effect of such a course of conduct, "principles of equitable estoppel cannot be ignored." Ibid.
*93 Whether defendants assert the direct benefit of the oral agreement, or the equitable force of the landlord's permission and continued compliance with his initial agreement, defendants' affection for their pet was permitted to grow over an 11-year period during which they gave no cause for the landlord's or another tenant's complaint. Whatever may be the landlord's rights with respect to another tenant, in the status defendants occupy we find they have the right to enforce their separate agreement in law or raise plaintiff's estoppel in equity[1].
The Terhune Courts opinion construes the Anti-Eviction Act, N.J.S.A. 2A:18-61.1, as "in derogation of the landlord's common-law right of ownership" and thus subject to strict construction. 163 N.J. Super. at 223. We prefer to view N.J.S.A. 2A:18-61.1 as remedial legislation recognizing tenants' continuing right to occupancy of their rented quarters  their homes. As such, this legislation should be liberally construed to effectuate its purpose. See Board of Conservation and Development v. Veeder, 89 N.J.L. 561, 563 (E. & A. 1916), where the court, quoting Blackstone, noted "it is the business of the judges so to construe such statutes as to suppress the mischief, and advance the remedy". The Supreme Court in Guttenberg S & L Ass'n v. Rivera, 85 N.J. 617 (1981) when determining that the Anti-Eviction Act did not limit a mortgagee's right of foreclosure, nevertheless noted the remedial nature of the Act and that one of the evils at which the Act had been directed was "arbitrary refusal to renew leases." 85 N.J. at 626. The dissenting justices also strongly noted that the Act "is meant to afford those tenants some measure of security in *94 the occupancy of their homes provided that no good cause exists for eviction."
If a landlord, as here, bound itself by contract to permit tenants to keep their dog so long as they maintained it, notwithstanding continued "no pets" provisions in the lease, such agreement should not be construed to be limited to the two years of the initial lease, especially when we take into consideration the general knowledge that a dog's life span is several times longer than such 2-year period. This separate agreement may be separately enforced.
The judgment of the Special Civil Part is reversed and the matter is remanded to the Law Division for the entry of a judgment dismissing the complaint.
NOTES
[1] Compare Hollywood Leasing Corp. v. Rosenbloom, 100 Misc.2d 158, 418 N.Y.S.2d 883 (Sup.Ct. 1979), where on facts similar to the instant action (but without so long a residence) the enforcement of the lease provision was deemed "unconscionable" and violative of the underlying requirement of good faith and fair dealing borrowed from the Uniform Commercial Code, § 2-302 at 888-90. see N.J.S.A. 12A:2-302; Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 182 (1981).