201 N.J. Super. 1 (1985)
492 A.2d 385
GEORGE YOUNG, PLAINTIFF-RESPONDENT,
v.
VICTOR SAVINON, FLORA POSSUMATO, AND MILAGROS BROSONSKI, DEFENDANT-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 25, 1985.
Decided April 9, 1985.
*3 Before Judges DREIER and SHEBELL.
Rutgers Urban Legal Clinic represented appellants (Jack C. Feinstein, on the brief).
No brief was timely filed for respondent.
The opinion of the court was delivered by DREIER, J.A.D.
Defendants appeal from a decision of the Special Civil Part enforcing a "no pets" provision in defendants' renewal leases. Defendants had been tenants in plaintiff's apartments prior to *4 his acquiring title. Their earlier leases did not prohibit pets, but upon renewal after plaintiff's purchase, the leases contained a new "no pets" provision.
At issue before us is whether under the facts of this case the "no pets" provision should be sustained. The trial judge found herself bound by Terhune Courts v. Sgambati, 163 N.J. Super. 218 (Cty.D.Ct. 1978), aff'd o.b. 170 N.J. Super. 477 (App.Div. 1979), certif. den. 84 N.J. 418 (1980), and upheld plaintiff's right to dispossess defendants unless they removed their dogs.
At the time of the trial in 1982 defendant Possumato had been residing in the premises with her daughter, now a teenager, for six years and had brought her dog with her when she moved in. She had owned the dog four years at that time, and thus the dog must now be 12 to 13 years old. The wife of defendant Savinon had lived in their apartment for only a year at the time of trial, but had owned the dog for some time prior to moving into the apartment. The dog is now between 12 and 13 years old. The dog is her constant companion and her attachment to the animal is also partially due to the fact that it had belonged to her sister until her sister's death. The third defendant, Mrs. Brosonski, first lived in the apartment in 1973, and as of the time of trial had lived there for 8 of the past 9 years. Her dog also is between 13 and 14 years old. The dogs are respectively a German shepard, a Scottish terrier and a Chihuahua.
Testimony established that the premises are located near warehouses, which are unoccupied at night, and that there are bars in the area. People are known to "hang out" around the building at night; drunks often throw beer bottles or fight at night in the alleyway near the premises, waking up the tenants; the tenants have also experienced attempted break-ins. The entrance door to the building has been forced open, and one year prior to the trial a man had been stabbed to death in the building. Both the defendants and other tenants testified that the presence of the dogs make all of the tenants feel safer, since they give warning when strangers approach.
*5 Prior to plaintiff's purchase of the building, the landlord imposed no condition prohibiting pets, and defendants all moved in with their pets with knowledge of former landlord's policy. In December 1981 when plaintiff purchased the premises he was aware that five animals were maintained in the twelve unit apartment house[1]. Plaintiff, who is afraid of dogs, admits purchasing the premises with the intention of forcing the tenants either to get rid of their pets or move.
None of the dogs belonging to the defendants has been the subject of any but the most minor complaint by another tenant or by the prior or present landlord. None of the dogs is permitted out of its apartment unattended.
At the trial defendants presented testimony by Dr. Aaron Katcher, an Associate Professor of Psychology at the University of Pennsylvania and a specialist concerning the influence of companion animals on the mental and physical health of their owners. His testimony established that the loss of their pets to people such as defendants would cause significant health problems, especially if the loss is due to a defendant being forced to give up his or her pet as opposed to the pet's dying a natural death. Defendants could be expected to suffer grief and depression as great as that suffered at the loss of a family member and, in addition, suffer from a sense of guilt and loss of self-esteem. On a positive note, the witness testified to studies showing that the presence of a pet lowers blood pressure, decreases anxiety, combats depression and generally increases the owner's health. In fact, the presence of pets generally lowers the rate of mortality. As to Mrs. Savinon, and defendants Possumato and Brosonski, Dr. Katcher testified that one would be increasingly unwilling to leave her home, another *6 would suffer a worsening in her cardiovascular system and increased hypertension and the third would experience severe grief, especially since this woman would not only grieve for the loss of her dog but suffer a reawakened grief for the loss of her sister, the dog's former owner. He expected that if these women were forced to choose between giving up their pets or moving, they would feel forced to move.
This case was tried twice. After the first trial the complaints were dismissed on procedural grounds. In the second trial it was stipulated that the testimony initially taken could be considered by the judge who, on April 20, 1983, granted judgments for possession against the three defendants. A stay was entered pending this appeal.
Prior to the enaction of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 et seq., a landlord had the right to refuse to renew a lease for practically any reason, other than a basis that would be in violation of the Law Against Discrimination, N.J.S.A. 10:5-1 et seq. The Anti-Eviction Act, however, limited the causes for eviction and required that landlords be "reasonable" in their relations with their tenants insofar as placing restrictions upon a tenant's activities. These restrictions could be placed in the rules and regulations promulgated by the landlord, N.J.S.A. 2A:18-61.1(d), in the lease covenants themselves, N.J.S.A. 2A:18-61.1(e), or in changes in the terms and conditions contained in a renewal lease, N.J.S.A. 2A:18-61.1(i). These sections all require, however, that the provisions be "reasonable."
The court in Terhune Courts v. Sgambati, supra, assumed that an outright ban on pets was reasonable, citing Housing Auth., Atlantic City v. Coppock, 136 N.J. Super. 432, 435 (App.Div. 1975). As has been recently explained by us in Royal Associates v. Concannon, 200 N.J. Super. 84, 90-91 (App.Div. 1985), the discussion in the Atlantic City case was dictum and was also stated as an assumption without an *7 analysis of the impact of the statement in the particular case. Likewise, in Terhune Courts, the court assumed that it was bound by a prior appellate determination that a "no pets" provision was reasonable, irrespective of the facts. The court there also reasoned that it was limited to assessing the agreements of landlord and tenant during only the current term of the lease, without reference to any agreement concerning their continuing relationship. 163 N.J. Super. at 222. The fallacy in that argument can be demonstrated by assuming that a landlord made a promise at the commencement of the first lease that a tenant would be charged 80% of the rental charged to the other tenants for the same size apartment for so long as the tenant remained at the premises. If after a few renewals of the lease at such rate the landlord determined to charge the tenant the full rental, contending that any agreement to the contrary had been made during the term of a prior lease and, therefore, terminated with the end of that lease, would a court permit such repudiations? We think not. A landlord may make an abiding agreement outside of the lease that is intended to transcend the provisions of individual leases, and which may be enforced. The tenant, of course, must carry the burden of proof and demonstrate that the separate agreement was made. In Royal Associates v. Concannon, supra, we found an express contract, not denied by the landlord, that the tenants could keep their dog so long as they controlled it. The tenants had satisfied their commitment, and the landlord was estopped from enforcing the "no pets" provision of the lease during the lifetime of the animal so long as the tenants continued to comply with their agreement to control it.
In the case before us, the prior landlord rented the apartment to tenants knowing they possessed dogs. Given the ages and family situations of the tenants it was reasonable to expect that the tenants would be attached to their animals. Agreements between the landlord and tenant need not be in writing nor even be expressed in words. Enforceable agreements also may be implied in fact from the conduct of the *8 parties. St. Paul Fire & Marine Co. v. Indem. Ins. of No. America, 32 N.J. 17, 23 (1960). If the prior landlord by his actions bound himself to permit the continued possession of these animals by their owners and this implied contract also transcended the term of the then-current lease, the former landlord could have conveyed to his transferee no greater rights than he possessed. Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116, 127-128 (1967). This is not a situation where a purchaser without notice cannot be bound by unrecorded outstanding rights to real property. Palamarg Realty Co. v. Rehac, 80 N.J. 446 (1979). In this case the purchaser was aware that the Anti-Eviction Act permitted only reasonable changes in the lease terms or a landlord's rules or regulations, and that the premises were subject to that Act. Plaintiff also was familiar with the then-current tenants, that these defendants possessed dogs and that their possession of the animals was not in violation of any term of their leases.
This is not to say that a landlord may not validly prohibit pets in rental premises owned by him. The only blanket exception to this right is contained in N.J.S.A. 10:5-29.2 governing guide dogs for a handicapped, blind or deaf person. The issue here, however, is whether the prohibition shall operate retroactively to force the removal of pets already owned by tenants in a situation where there was no lease violation when the pets were acquired. In Terhune Courts and in the trial court's opinion here, the trial judges determined that the test of reasonableness was to be applied solely to the landlord's interest. In the context of the Anti-Eviction Act the term applies to the lease provision, not the landlord's or tenant's sole interest. Since the "no pets" provision may be enforced in a summary dispossess or declaratory judgment proceeding, if a tenant claims special circumstances, the reasonableness of the prohibition relating to both the landlord and the tenant in his or her particular circumstances should be inquired into by the court.
*9 The tenant may be able to show a waiver or estoppel. See Royal Associates v. Concannon, supra. See also Jasontown Apts. v. Lynch, 155 N.J. Super. 254 (App.Div. 1978), where the reasonableness of the "no pets" provision was stipulated, but the tenant was entitled to a hearing to determine in the circumstances of that case if the provision had been waived. Accord Shannon & Luchs v. Tindal, 415 A.2d 805 (Ct. App. D.C. 1980); Doerr v. Maher, 337 Ill. App. 245, 85 N.E.2d 363 (1949); see also Ocean Gate Associates Starrett Systems, Inc. v. Dopico, 109 Misc.2d 774, 441 N.Y.S.2d 34, 35 (Civ.Ct. 1981) (where the dog was needed to afford protection to a handicapped owner and thus the "no pets" provision was unenforceable) and Majors v. Housing Auth. DeKalb Cty., 652 F.2d 454, 458 (5th Cir.1981) (where it was alleged that the mental deficiency of the tenant required the companionship of a dog and the case was remanded for a factual determination to see whether the "no pets" provision would be enforced).
In the case before us there was extensive psychological testimony concerning both the bonding between the defendants and their dogs and the adverse effect to the tenants if the provision were to be enforced against them. This testimony stood unimpeached. The trial judge determined that she could not consider the reasonableness of the "no pets" provision from the standpoint of the tenants under Terhune Courts, 170 N.J. Super. at 222. She correctly found that she was bound by prior appellate authority. We now find, however, that such statement of the law in Terhune Courts was in error.
Rather than remand this matter for reconsideration by the trial judge, we will exercise our original jurisdiction under R. 2:10-5 and render a complete determination of this matter. Based upon the factual testimony and the psychological expert's opinion, and considering the conduct of the prior landlord known to the plaintiff, we find that it would be unreasonable to enforce the "no pets" provision with respect to the defendants *10 and their present pets. Through attrition, defendants' apartments will be brought into compliance.
By this determination, we should not be misunderstood as avoiding all "no pets" provisions in leases. Such provisions have been found reasonable from a landlord's point of view and should be enforced unless the landlord has expressly or impliedly permitted particular pets to be maintained, is otherwise estopped from enforcing the provision, or if a tenant who had previously been allowed to maintain a pet upon the premises can show that it is unreasonable to enforce the provision under the particular circumstances of the case before the court.
The judgments of possession appealed from are reversed and the complaints are hereby dismissed.
NOTES
[1] In addition to the three dogs belonging to defendants, a cat was owned by another tenant, and the superintendent of the premises owned a dog which he still possessed at the time of trial. Actually, there was a sixth animal. One of the defendants owned a fish, which plaintiff also demanded be removed in his initial notices.