**ERIE INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**Gary L. BELCHER, an incarcerated convict; Gary L. Belcher, in his own right; William W. Bailey, Jr., Sheriff of Wyoming County in his capacity as committee for Gary L. Belcher, an incarcerated convict; Charles W. Cook, Jr., Administrator of the Estate of Carla Sue Belcher, deceased, Defendants.**

**Civ. A. No. 5:88–0139.**

United States District Court, S.D. West Virginia.

Aug. 29, 1989.

James D. Lamp, of Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., for plaintiff.

James C. Lyons, Pineville, W.Va., for Gary L. Belcher, William W. Bailey, Jr.

Warren R. McGraw, Pineville, W.Va., for Charles W. Cook, Jr.

MEMORANDUM ORDER

HALLANAN, District Judge.

This matter is before the Court via the Plaintiff's motion for summary judgment. After careful consideration the Court is prepared to rule on said motion.

This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201. This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1332. The Plaintiff seeks a declaration that it is not obligated to defend or indemnify the Defendant Gary L. Belcher in a Wyoming County Circuit Court wrongful death action by Charles W. Cook, Jr., Administrator of the Estate of Carla Sue Belcher, deceased, against Gary Belcher. The Plaintiff had issued an "Erie Pioneer 21st Century Homeprotector Policy" (hereinafter "Policy") to Carla Sue Belcher, which Policy was in effect at the time of her death. Gary Belcher was found guilty of second degree murder for the February 28, 1985 death of Carla Sue Belcher. Policy coverage extended to the spouse of Carla Sue Belcher, Gary Belcher, pursuant to the following provision:

'You', 'your' or 'Named Insured' ... also include the spouse of the Subscriber if a resident of the same household.

The Policy covered "sums which anyone we protect becomes legally obligated to pay as damages because of bodily injury ..."

In support of its position that it need not defend or indemnify Gary Belcher in the wrongful death action, the Plaintiff argues that Gary Belcher intended to kill Carla Sue Belcher, and that the Policy's intentional injury exclusion prevents his coverage under the Policy. Exclusions of coverage under the Policy, at 9, include "[b]odily injury or property damage expected or intended by anyone we protect."

The Defendant Gary L. Belcher, by his Guardian Ad Litem, contends that West Virginia law does not permit issue preclusion or collateral estoppel from a criminal to a civil action, and that an issue of material fact exists as to Belcher's intent at the time of the shooting of Carla Sue Belcher. This Defendant, however, has cited only Virginia and Georgia case law and *Moore's Federal Practice* in support of this contention.

The Defendant Charles W. Cook, Jr., Administrator of the Estate of Carla Sue Belcher, argues that an issue of material fact exists as to Gary Belcher's guilt at the time of the shooting inasmuch as Gary Belcher in the criminal action defended on the basis that the killing was accidental. This Court finds this argument to be without merit, however, inasmuch as Gary Belcher, after a full jury trial, was found guilty of second degree murder, the jury not having been persuaded by the defense of accident. Belcher was given a full opportunity to litigate the issue of his guilt. He had every reason to make as vigorous a defense as possible. His personal interests would have been served by establishing that the shooting was accidental.

This Defendant further argues that West Virginia courts would not give preclusive effect in a civil action to a finding of guilty in a criminal action. The Court did not find any of the West Virginia cases cited by this Defendant in support of this proposition to be directly on point, but considered *Conley v. Spillers*, 301 S.E.2d 216 (W.Va.1983), for its general discussion of collateral estoppel.

This Court is confronted with two issues. First, the Court must determine if a guilty verdict of second degree murder establishes that the guilty party intended his acts. If second degree murder does not entail an intentional act, the Court need proceed no further. Second, the Court must determine if, under West Virginia law, a court should give preclusive effect in a civil action to a finding of second degree murder in a criminal action. This second issue involves the doctrine of collateral estoppel.

The West Virginia Supreme Court of Appeals has addressed the issue of intent and second degree murder. It is clear to this Court, upon a review of pertinent case law, that intent is subsumed within a conviction of second degree murder. The Supreme Court of Appeals has declared that the intent to kill or malice is a required element of both first and second degree murder. *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982). The court has also held that, in regard to second degree murder,

> the requisite criminal intent would be the intent to do great bodily harm, or a criminal intent aimed at life, or the intent to commit a specific felony, or the intent to commit an act involving all the wickedness of a felony.

*State v. Haddox*, 166 W.Va. 630, 276 S.E.2d 788, 790 (1981).

Having established that Belcher intended his acts which resulted in bodily injury, the Court will now address the issue of collateral estoppel. The doctrine of collateral estoppel is a branch of the broader law of res judicata. *Conley v. Spillers, supra*, distinguishes collateral estoppel from res judicata. Res judicata prevents multiple suits against the same party by barring relitigation of matters actually determined as well as matters that might have been raised in the original action. *Conley*, 301 S.E.2d at 219, *citing Sayre's Adm'r v. Harpold*, 11 S.E. 16 (W.Va.1890). Res judicata requires identity of the thing sued for, identity of the cause of action, identity of persons and identity of the status of the person for or against whom the action is brought. *Id.* n. 2, *citing Marguerite Coal Co. v. Meadow River Lumber Co.*, 98 W.Va. 698, 127 S.E. 644 (1925). Collateral estoppel prevents relitigation of issues actually litigated in an earlier suit between identical parties or those in privity. *Id.* 301 S.E.2d at 220, *citing Lane v. Williams*, 150 W.Va. 96, 144 S.E.2d 234 (1965).

Courts traditionally have held that to apply collateral estoppel in a subsequent suit, both parties or their privies in the second action must have been bound to the judgment in the first case, i.e., the estoppel of a judgment had to be mutual. *Triplett v. Lowell*, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936). The doctrine of mutuality of estoppel, however, subsequently underwent

a fundamental change in the common-law. "In its pristine formulation, an increasing number of courts have rejected the principle as unsound." *Blonder–Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 327, 91 S.Ct. 1434, 1442, 28 L.Ed.2d 788 (1971).

Despite the trend away from mutuality of estoppel, however, a federal court is still bound to adhere to the principles of estoppel articulated by the appropriate state law. *Haring v. Prosise,* 462 U.S. 306, 313 n. 6, 103 S.Ct. 2368, 2373 n. 6, 76 L.Ed.2d 595 (1983). All parties agree, and the Court finds, that the substantive law of West Virginia governs this matter. West Virginia has traditionally adhered to the doctrine of mutuality of estoppel. *See, e.g., Lane v. Williams,* 150 W.Va. 96, 144 S.E.2d 234 (1965).

The Supreme Court of Appeals of West Virginia in *Conley v. Spillers, supra,* while providing the traditional definitions of collateral estoppel and res judicata under State law, *see supra* at 476, wherein collateral estoppel applied only to parties and their privies, recognized that a majority of jurisdictions have abandoned mutuality of parties in certain circumstances. *Conley v. Spillers,* 301 S.E.2d at 222. In Syllabus Point 5 of *Conley* the Supreme Court of Appeals held that, "In this jurisdiction under certain conditions mutuality of parties is no longer necessary in order to enforce a judgment against a party or his privy." The court adopted the rule of *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), that, in ascertaining the right of a stranger to an initial action to assert collateral estoppel in a subsequent action, a "trial court should have a rather broad discretion in determining when it should be applied." *Conley,* 301 S.E.2d at 224. The court stated in Syllabus Point 8, however, that the party against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim.

The Supreme Court of Appeals in *Pitsenbarger v. Gainer,* 330 S.E.2d 840 (W.Va. 1985), permitted a party not privy to the initial action to assert collateral estoppel against a party to the first. The court recognized that the doctrine of collateral estoppel "has gradually expanded beyond the realm of the immediate parties and their privies." *Id.* at 843. The court set forth several factors relevant in determining the right of a party not privy to the initial action to utilize collateral estoppel:

> Whether a stranger to the first action can assert collateral estoppel in the second action depends on several general inquiries: Whether the issues presented in the present case are the same as presented in the earlier case; whether the controlling facts or legal principles have changed substantially since the earlier case; and, whether there are special circumstances that would warrant the conclusion that enforcement of the judgment would be unfair.

*Id., citing Conley v. Spillers, supra.* The United States Supreme Court has stated that "the achievement of substantial justice rather than symmetry is the measure of the fairness of the rules of res judicata." *Blonder–Tongue Lab.,* 402 U.S. at 325, 91 S.Ct. at 1441.

Applying these factors to the matter *sub judice,* while obviously the broad issues in the instant declaratory judgment action differ from those of the criminal action, the Court finds the narrow issue of intent to be similar. In the instant action, coverage under the insurance policy in dispute will not extend to Gary Belcher if he intended to inflict bodily harm. To have been convicted of second degree murder, the jury in Belcher's criminal trial must have deliberated Belcher's criminal intent, and found that he possessed the requisite criminal intent, as already discussed herein.

The second factor to consider is whether the controlling facts or legal principles have changed substantially since the earlier case. As the instant dispute arises out of a killing the subject of a criminal trial, the Court finds that the controlling facts remain unchanged. The Court finds that a determination as to intent in regard to the insurance policy does not entail consideration of a legal principle but is one of fact, thus the Court need not consider whether the legal principles remain unchanged.

The third factor to consider is whether there are special circumstances that would warrant the conclusion that enforcement of

478

the initial judgment would be unfair. Gary Belcher was afforded an opportunity to defend himself in the criminal action brought against him, including an opportunity to show the killing was accidental, as aforementioned. He did not appeal the conviction of second degree murder. The Court perceives no unfairness that would result if it precludes Belcher from relitigating the issue of his intent.

Applying the foregoing factors, this Court believes it appropriate to preclude Gary Belcher from relitigating the issue of his intent. The issue of intent remains the same, the facts remain the same, and no unfairness will result. Belcher had a prior opportunity to litigate his intent. A jury found beyond a reasonable doubt that Belcher had the requisite criminal intent necessary for a conviction of second degree murder, a more stringent standard to meet than in a civil relitigation. As the jury in the criminal action found that Belcher intended his acts, this Court believes relitigation would be a waste of judicial resources and would result in multiple litigation. The Court believes that substantial justice and fairness are achieved in precluding the relitigation of intent. *See Blonder–Tongue Lab., supra* at 477.

This holding is in accord with the law of West Virginia and the law of other jurisdictions. *See, e.g., Compton v. Ide,* 732 F.2d 1429 (9th Cir.1984); *Wolfson v. Baker,* 623 F.2d 1074 (5th Cir.1980); *Nathan v. Tenna Corp.,* 560 F.2d 761 (7th Cir.1977); *Cardillo v. Zyla,* 486 F.2d 473 (1st Cir.1973); *Aetna Life & Casualty Ins. Co. v. Johnson,* 207 Mont. 409, 673 P.2d 1277 (1984); *Hanover Ins. Co. v. Hayward,* 464 A.2d 156 (Me.1983); *Ideal Mutual Ins. Co. v. Winker,* 319 N.W.2d 289 (Iowa 1982); *Ross v. Lawson,* 395 A.2d 54 (D.C.1978); *New Jersey Manufacturers Ins. Co. v. Brower,* 161 N.J.Super. 293, 391 A.2d 923 (1978) (doctrine of collateral estoppel barred an injured party from relitigating with an insurer the question of whether his injuries had been intentionally caused by the insured and within the policy exclusion for bodily injury caused "intentionally" by the insured where insured convicted of second degree murder and assault with intent to kill); *Casey v. Northwestern Security Ins. Co.,* 260 Or. 485, 491 P.2d 208 (1971) (insured collaterally estopped from relitigating the issue of whether his acts were intentional and thus not covered under policy of insurance where insured convicted of assault with a dangerous weapon).

As an additional factor in permitting a stranger to a prior litigation to assert collateral estoppel against a party to the prior action, the West Virginia Supreme Court of Appeals in *Conley* held that it would deny a plaintiff the benefits of collateral estoppel if he could not justify his not joining the original litigation. *See also Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 330–31, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). As the Plaintiff Erie Insurance Company could not have joined the criminal action involving Belcher, the Plaintiff has also satisfied this additional consideration.

As the Court finds that Belcher intended the acts which resulted in the death of his wife, Carla Sue Belcher, there being no dispute of material fact as to his intent, Belcher is not entitled to receive indemnity or a defense from Erie Insurance Company under the Policy issued to his wife. As Belcher is not covered under the Policy, any dispute Charles W. Cook, Administrator of the Estate of Carla Sue Belcher, has with the insurance company is moot by the Court's holding today that Belcher is not covered under the Policy. This is not to say that the Administrator may not sue Belcher, *see State Farm Fire and Casualty v. Clendening,* 150 Cal.App.3d 40, 197 Cal.Rptr. 377, 378 (4 Dist.1983), but only that Belcher may not look to the Plaintiff Erie Insurance Company for coverage under the Policy.

Accordingly, it is hereby ORDERED that the Plaintiff's motion for summary judgment be GRANTED, there being no dispute as to any material fact.

IT IS SO ORDERED.