204 N.J. Super. 144 (1985)
497 A.2d 1265
534 HAWTHORNE AVENUE CORP., PLAINTIFF-RESPONDENT,
v.
BUCK BARNES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 2, 1985.
Decided April 15, 1985.
*145 Before Judges COLEMAN and SIMPSON.
*146 Dean J. Despotovich, Essex-Newark Legal Services, argued the cause for appellant (Dean J. Despotovich and Melissa Brown, on the brief).
Walter R. Cohn argued the cause for respondent (Michael T. Shivietz, on the brief).
The opinion of the court was delivered by SIMPSON, J.A.D.
Buck Barnes, the tenant of apartment 8C in 279 Goldsmith Avenue, Newark, appeals from a judgment for possession entered in favor of the landlord, 534 Hawthorne Avenue Corporation. The tenancy was for a month to month term and the $275 rent was payable on the first day of each month. Although there have been other disputes between the parties, the operative facts necessary to dispose of this appeal are uncontroverted. Purportedly in accordance with N.J.S.A. 2A:18-61.1j, the landlord on July 4, 1984 gave Barnes notice to cease late payment of rent evidenced by the following schedule:

 Rent due Rent paid
 Sept. 1, 1983 Sept. 22, 1983
 Oct. 1, 1983 Oct. 27, 1983
 Nov. 1, 1983 Nov. 28, 1983
 Dec. 1, 1983 Jan. 18, 1984
 Jan. 1, 1984 Jan. 18, 1984
 Feb. 1, 1984 April 16, 1984
 March 1, 1984 April 16, 1984
 April 1, 1984 April 25, 1984
 May 1, 1984 May 16, 1984
 June 1, 1984 June 28, 1984

On July 27 the Landlord caused Barnes to be served with a Notice To Quit and Demand for Possession as of September 1, 1984 pursuant to N.J.S.A. 2A:18-61.2b. The July rent was paid on July 28, 1984. The landlord contends that the record of habitual late payments, followed by the Notice to Cease, and further followed by a single late payment, is sufficient under *147 N.J.S.A. 2A:18-61.1j to permit it to terminate the tenancy pursuant to N.J.S.A. 2A:18-61.2b. In accordance with the latter statute, the action for possession was properly not instituted until September 5, 1984. N.J.S.A. 2A:18-61.1j provides as good cause and ground for removal of a residential tenant that:
The person, after written notice to cease, has habitually and without legal justification failed to pay rent which is due and owing.
Barnes contends that "habitually" means more than a single late payment following the Notice to Cease. Both sides rely upon the following passage in Scugoza v. Stockton, 166 N.J. Super. 122, 123 (App.Div. 1979):
We read subsection 61.1(j) as authorizing eviction of a tenant who has been habitually and unjustifiably late in his rent payments after written notice to cease late payment has been given, and after the landlord "has made written demand and given written notice for delivery of possession of the premises." N.J.S.A. 2A:18-61.2. Hence, in such cases the tenant has paid his rent, albeit on a routinely late basis. In such cases, notice is required. Where, however, the tenant has failed entirely to pay the rent due and owing, as is the case here, eviction is available under section 61.1(a) and notice complying with N.J.S.A. 2A:18-61.2 is expressly excused thereby.
Scugoza, as the last cited sentence indicates, involved complete failure to pay rent, not late payment as in the present case. Thus, the issue presented is one of first impression. There are three reasons why we believe that the tenant's contention is correct:
1. The plain-meaning of the words used, given their position in the single sentence of subsection 61.1j, is that "habitual" failure to pay (in this case "late" payment) must follow the written notice to cease. It is undisputed, of course, that habitual means more than a single instance. Accordingly, there must be more than one late payment following notice.
2. The spirit and policy of the statute reveals the true meaning of the words used. See Generally Caputo v. The Best Foods, Inc., 17 N.J. 259, 264 (1955) and particularly as to *148 the Anti-Eviction Act, see Stamboulos v. McKee, 134 N.J. Super. 567, 572-573 (App.Div. 1975). The purpose of the Act is to limit eviction of tenants to reasonable grounds and upon suitable notice. The relied upon section does not actually speak to "late payment" and instead refers to "failure to pay." We agree with Scugoza however that this section does cover late payments. It would not accord with the remedial purpose and intent of the legislation to permit the piggybacking of late payments that antedate Notice to Cease to give rise, together with a single post-Notice late payment, to a non-curable basis for eviction.
3. Acceptance of the landlord's position would result in little or no effective notice and would preclude a tenant from curing any prior laxity in making on-time rent payments. As noted above, the ten prior rent payments were made (and accepted) between 15 and 75 days late. The Notice to Cease that was given on July 5 was thus justified, but even if payment had been made the next day (July 6) it would not have cured the defect and, because late, would have still supported a Notice to Quit under the Landlord's interpretation of N.J.S.A. 2A:18-61.1j. Statutes will not be interpreted in a manner leading to absurd or unreasonable results. State v. Gill, 47 N.J. 441, 444 (1966).
We therefore hold that habitual late payment of rent, to constitute a ground for removal of a residential tenant under N.J.S.A. 2A:18-61.1j, requires more than one late payment following a written notice to cease. Since this requirement was not met in the case under review, the judgment for possession removing the tenant was erroneous. In view of this determination, it is unnecessary to consider Barnes' other asserted grounds for resisting eviction.
Reversed.