447 ASSOCIATES, A LIMITED PARTNERSHIP OF NEW JERSEY, PLAINTIFF, v. CARMEN MIRANDA, DEFENDANT–APPELLANT.

Argued November 7, 1988—Decided July 10, 1989.

524

*W. Marshall Prettyman,* Senior Staff Atty., argued the cause for appellant (*Hugh D. Heisler,* Acting Executive Director, Essex–Newark Legal Services, attorney).

No appearance on behalf of plaintiff.

The opinion of the Court was delivered by

CLIFFORD, J.

We granted certification, 110 *N.J.* 289 (1988), to address the circumstances under which a landlord may properly maintain a summary dispossess action for nonpayment of rent against a tenant who fails to abide by new provisions imposed by the landlord in a new leasing arrangement. Although the amount of money involved is little more than $100, facts similar to those of this case will doubtless be repeated, given the current shortage in this state's housing supply and the increasing numbers of people residing in rental dwellings.

The Law Division gave judgment of possession for the landlord. The Appellate Division, in an unreported opinion, modified the judgment and, as modified, affirmed. We reverse.

I

In October 1984 defendant, Carmen Miranda, entered a lease for possession of an apartment in Newark, which she shared with her minor child. Although the record contains no copy of it, there was apparently a written lease signed by plaintiff-landlord's predecessor in interest. It became the accepted practice under that lease for defendant to pay the landlord or his agent with cash, by hand, after she had received and cashed her monthly public-assistance check, which typically arrived on the third of the month or later. In the event defendant had not yet received or cashed the check, the landlord's agent would return sometime later to receive payment. The original landlord never sought from defendant any late charges or other penalties.

The foregoing practice continued until May 1986, when plaintiff-landlord purchased the building containing defendant's apartment. On the eighteenth of that month plaintiff mailed to defendant a "Notice of Rent Increase" that terminated her tenancy effective August 31, 1986, and offered a new tenancy subject to increased rent and to several changes in the terms and conditions of the lease, among them an increase in defendant's monthly rent and a requirement that the increased rent

be paid on the first of the month by mail only, with a twenty-five dollar penalty assessed as additional rent if it was not paid by the fifth of the month. Acceptance of the new lease and its provisions would be implied, the notice said, by defendant's continued possession of the apartment.

Defendant never formally executed a new written lease with plaintiff but remained in possession of the apartment and paid the increased rent. Under the new arrangement defendant was able to meet her obligation only by cashing her public-assistance check, purchasing a money order, and then mailing it, a procedure that defendant followed dutifully. Nevertheless, during the succeeding six months, four of defendant's payments (September and December 1986, January and February 1987) were received two to four days after the fifth of the month. In each of those months a twenty-five dollar late fee was assessed but not paid. As will be seen, defendant objected to the imposition of the late fees in light of her circumstances, and not to the rent increase itself or to late fees in general.

On February 19, 1987, plaintiff filed a summons and complaint for possession on account of defendant's nonpayment of rent. Specifically, plaintiff sought $470 for payment of February's rent, plus late fees and court fees. It was admitted at trial, however, that plaintiff had received the February rent on February 9, 1987, and that plaintiff was seeking only $100 in late charges and $8.60 in court fees. Thus, at the time of trial, plaintiff's action was based on a claim for the late charges payable as rent under the new terms included in the notice of rent increase, and not for nonpayment of the base rent.

After a summary hearing, the trial court found that defendant had entered into an enforceable agreement to pay the late charges. It entered a judgment for plaintiff that provided that defendant would lose possession of the apartment unless she paid plaintiff $108.60 in late charges and court fees. One day after entry of judgment and at the direction of the court, defendant deposited the $108.60 with the court. The trial court

entered a stay pending appeal, which resulted in the Appellate Division affirming and modifying the judgment so that the complaint for possession was dismissed with the $108.60 remaining due plaintiff.

Defendant and her son continue in possession of the apartment, and no further delinquency problems have been reported. Here, as in the Appellate Division, plaintiff did not file a brief or enter an appearance.

## II

This action arose under the Anti–Eviction Act, *N.J.S.A.* 2A:18–61.1 to –61.12 (the Act). The Act was passed in 1974 in acknowledgement of the severe shortage of housing statewide, a shortage that continues to exist today. *A.P. Dev. Corp. v. Band,* 113 *N.J.* 485, 492 (1988). Its purpose was set out in the following statement attached to the Act when it was proposed to the Assembly:

> At present, there are no limitations imposed by statute upon the reasons a landlord may utilize to evict a tenant. As a result, residential tenants frequently have been unfairly and arbitrarily ousted from housing quarters in which they have been comfortable and where they have not caused any problems. This is a serious matter, particularly now that there is a critical shortage of rental housing space in New Jersey. This act shall limit the eviction of tenants by landlords to reasonable grounds and provide that suitable notice shall be given to tenants when an action for eviction is instituted by the landlord. [Statement attached to *L.* 1974, *c.* 49.]

Thus the Act was designed to limit the eviction of tenants to "reasonable grounds" and to provide for "suitable notice" of tenants in the event of an eviction proceeding. *See A.P. Dev. Corp. v. Band, supra,* 113 *N.J.* at 492 (quoting statement attached to Act when it was proposed in the Assembly, *L.* 1974, *c.* 49); *534 Hawthorne Ave. Corp. v. Barnes,* 204 *N.J.Super.* 144, 148 (App.Div.1985); Comment, "New Jersey's Anti–Eviction Act, N.J. Stat.Ann. §§ 2A:18.61.1 to –61.12 (West Cum. Supp.1980–81), Prohibits Removal of Tenants by Foreclosing Mortgagee Upon Default of Landlord–Mortgagor, Absent 'Good Cause'," 11 *Seton Hall L. Rev.* 311, 312 (1980) (*Removal*

*of Residential Tenants*). The Act established that tenants may not be removed from their residential premises except on one of various enumerated grounds constituting "good cause." *N.J.S.A.* 2A:18–61.1. The legislation was designed to protect residential tenants against unfair and arbitrary evictions by limiting the bases for their removal from premises covered under the Act. *Harden v. Pritzert*, 178 *N.J.Super.* 237, 240 (App.Div.1981); *Fargo Realty, Inc. v. Harris*, 173 *N.J.Super.* 262, 265 (App.Div.1980); *Stamboulos v. McKee*, 134 *N.J.Super.* 567, 572 (App.Div.1975).

In this case plaintiff sought defendant's eviction for nonpayment of rent. *N.J.S.A.* 2A:18–61.1(a) provides that there is "good cause" when a tenant "fails to pay rent due and owing under the lease whether the same be oral or written." *See Scugoza v. Stockton*, 166 *N.J.Super.* 122, 123 (App.Div.1979). In addition, Subsection (f) of that same section also provides that good cause for eviction exists when a "person has failed to pay rent after a valid notice to quit and notice of increase of rent, provided the increase in rent is not unconscionable and complies with any and all other laws or municipal ordinances governing rent increases." Finally, subsection (j) establishes good cause when a person, "after written notice to cease, has habitually and without legal justification failed to pay rent which is due and owing." This latter subsection has been held to cover claims of "habitual late payment." See *A.P. Dev. Corp. v. Band, supra,* 113 *N.J.* at 493–94; *see 534 Hawthorne Ave. Corp. v. Barnes, supra,* 204 *N.J.Super.* at 148; *Scugoza v. Stockton, supra,* 166 *N.J.Super.* at 123.

Defendant argues that the court below erred in allowing the landlord to impose material changes in her leasing arrangements "unilaterally" and then, without first allowing her to challenge their reasonableness, enforce those changes in a proceeding for summary dispossession based on the tenant's failure to satisfy the new terms. Put differently, defendant argues that to the extent she accepted a new "lease" at all, she never accepted the late-fee provision contained in plaintiff's

notice of rent increase, that she had a right to challenge the provision's reasonableness before it became final and binding, and that the late-fee term was in fact not "reasonable." Defendant further proposes that because plaintiff's nonpayment-of-rent claim is based on defendant's refusal to abide by the new late-fee term, *N.J.S.A.* 2A:18–61.1(i) is implicated. That provision states that there is good cause for removal of a tenant when

> [t]he landlord or owner proposes, at the termination of the lease, reasonable changes of substance in the terms and conditions of the lease, including specifically any change in the terms thereof, which the tenant after written notice, refuses to accept * * *.

■■ In establishing tenants' rights to continued occupancy of their rental dwellings the Anti–Eviction Act is remedial legislation deserving of liberal construction. *A.P. Dev. Corp. v. Band, supra,* 113 *N.J.* at 506; *Royal Assocs. v. Concannon,* 200 *N.J.Super.* 84, 93 (App.Div.1985); *Cima v. Elliott,* 224 *N.J.Super.* 436 (Law Div.1988). *Contra Terhune Courts v. Sgambati,* 163 *N.J.Super.* 218, 223 (Dist.Ct.1978), aff'd o.b., 170 *N.J.Super.* 477 (App.Div.1979), certif. den., 84 *N.J.* 418 (1980). We find that the clear purpose and spirit of the Anti–Eviction Act—to ensure that evictions are based on "reasonable grounds"—require the conclusion that where late payment or nonpayment of rent is the direct result of an unreasonable lease change of the kind impliedly barred by *N.J.S.A.* 2A:18–61.1(i), such late payment or nonpayment will not furnish good cause for eviction under *N.J.S.A.* 2A:18–61.1. *See R & D Realty v. Shields,* 196 *N.J.Super.* 212, 220 (Law Div.1984) (nonpayment-of-rent action dismissed because based on unreasonable lease change). Tenants deserving the protection of the statute's requirement that lease changes be reasonable cannot be put at a disadvantage because a landlord chooses to bring, in some alternative form (here, a charge of nonpayment of rent), a claim that follows from a tenant's refusal to accept a lease change.

To allow otherwise would effectively negate the applicability of *N.J.S.A.* 2A:18–61.1(i) to changes in lease terms affecting

rent payment, a result that could not have been intended by the legislature. Construction of a statute that renders any part of it inoperative, superfluous, or meaningless is to be avoided, *Paper Mill Playhouse v. Millburn*, 95 *N.J.* 503, 521 (1984); and "[s]tatutes *in pari materia*, that is, those which relate to the same matter or subject, are to be construed together as a unitary and harmonious whole, in order that each may be fully effective." *Azar v. Jabra*, 167 *N.J.Super.* 543, 552 (Dist.Ct. 1979) (citing *New Jersey Turnpike Auth. v. Washington Township*, 16 *N.J.* 38 (1954)). Here, then, defendant's inability to pay her rent at the designated time and the consequent imposition of late fees stemmed from the changes included in plaintiff's notice of rent increase, and as such provided a basis for eviction only to the extent that those changes were "reasonable."

Thus there is no need to determine whether plaintiff's claim would more properly have been brought under *N.J.S.A.* 2A:18–61.1(j) for habitual late payment of rent. We hold simply that in a dispossess action for nonpayment or late payment of rent, a defendant-tenant may raise the defense, as was raised in the trial court in this case, that the failure to abide by the tenancy's rent-payment requirements stemmed from an unreasonable change in tenant's renewal lease. We emphasize, however, that in applying the "reasonableness" standard of *N.J.S.A.* 2A:18–61.1(i) to nonpayment actions stemming from lease changes, we do not mean to extend the reach of subsection (i) so far as to affect cases involving a challenge to rent increases under subsection (f), in which "unconscionability" is clearly the standard. *See Calhabeu v. Rivera*, 217 *N.J.Super.* 552, 554–55 (Law Div.1987).

■ In respect of the burden of proof, we note that *N.J.S.A.* 2A:18–61.1(i) provides that in cases in which a tenant has received notice of termination pursuant to *N.J.S.A.* 2A:18–61.2, "the landlord or owner shall have the burden of proving that any change in the terms and conditions of the lease, rental or regulations both is reasonable and does not substantially reduce the rights and privileges to which the tenant was entitled

prior to the conversion." *N.J.S.A.* 2A:18–61.2 requires that tenants be notified in the event various forms of dispossess action are to be brought against them. For example, tenants who are the subject of claims based on non-acceptance of a lease change are entitled under *N.J.S.A.* 2A:18–61.2(e) to one-month notification before the landlord may institute the action for possession.

Specifically excepted from *N.J.S.A.* 2A:18–61.2's notice requirement, however, are claims based on nonpayment of rent under *N.J.S.A.* 2A:18–61.1(a) and (f). Nevertheless, because our ruling today is grounded in the Anti–Eviction Act's general emphasis on reasonableness, as expressed in the Act's legislative history, and because the burden of proving reasonableness is on landlords and owners in ordinary *N.J.S.A.* 2A:18–61.1(i) dispossess actions, we conclude that the legislature could not have intended that landlords or owners bringing actions for nonpayment or late payment of rent stemming from lease changes other than those affecting base rent amounts should escape that same burden. Accordingly, we hold that after defendants-tenants have raised the defense of an unreasonable lease change, plaintiffs-landlords or owners must prove the reasonableness of the nonaccepted change.

We are mindful that it has recently been held that in nonpayment actions under *N.J.S.A.* 2A:18–61.1(f) involving claims of unconscionable rent increases the burden of proving unconscionability is on tenants. *Calhabeu v. Rivera, supra,* 217 *N.J.Super.* at 555. Inasmuch as the defendant in this case is not complaining about the rent increase, we see no need to reflect on whether the burden of proof in rent unconscionability actions should be other than on tenants, notwithstanding the fact that rent increases too are changes in the material terms or conditions of a lease.

### III

■■ We turn next to the question of whether defendant in fact refused to accept the late-fee provision, proof of which is

ordinarily required in actions based on refusal of acceptance of a lease change, *N.J.S.A.* 2A:18–6.1.1(i), and is therefore impliedly required for nonpayment- or late-payment-of-rent actions stemming from new lease terms. We agree with the trial court's conclusion that by retaining possession of the apartment after August 31, 1987, defendant had, in accordance with the manner of acceptance provided by the "Notice of Rent Increase," entered into an enforceable leasing arrangement. Such agreements may be implied in fact from the conduct of the parties. *Young v. Savinon*, 201 *N.J.Super.* 1, 7–8 (App.Div.1985). In a month-to-month tenancy where there is no written lease, tenants impliedly consent to rent increases by remaining in possession of the estate after receiving a notice to quit and a notice of rent increase. *Harry's Village, Inc. v. Egg Harbor Township*, 89 *N.J.* 576, 583 (1982); *see Terhune Courts v. Sgambati, supra*, 163 *N.J.Super.* at 221 (Dist.Ct.1978); *Stamboulos v. McKee, supra*, 134 *N.J.Super.* at 571.

▪ A question remains, however, whether in accepting some of the lease changes imposed by plaintiff, defendant must be held to have accepted all such changes, thereby precluding subsequent challenges to an undesirable lease change. We think not. The plain language of *N.J.S.A.* 2A:18–61.1(i) requires that to establish "good cause" for removal the landlord demonstrate merely, and without limitation in respect of time, that a tenant has refused to accept a reasonable term. We therefore do not understand the statute to mean that a tenant must demonstrably refuse to accept a lease term, reasonable or otherwise, at the precise time the renewed tenancy begins. Put differently, acceptance of a renewal lease should not bar tenants from later challenging the reasonableness of a term contained therein.

In the ordinary *N.J.S.A.* 2A:18–61.1(i) action tenants, on thirty days notice, are afforded a day in court to argue the unreasonableness of the lease change in question. It therefore

also seems plainly repugnant to the spirit of the Anti–Eviction Act that the defendant in this case should have faced a choice between abandoning her leasehold and accepting a new leasing arrangement, including provisions governing payment, without the opportunity to present a challenge to the constituent late-payment charge.

■ Here defendant was told only that the new terms would apply to her lease and that her continued possession of the leasehold—which was her right under the statute absent a showing of good cause—would constitute acceptance of those terms. It does not appear that defendant ever had an adequate opportunity to reject the late-fee term, notwithstanding her apparent acceptance of the other terms set out by plaintiff. We recognize, of course, that defendant might have communicated with plaintiff by mail or telephone to express her refusal to accept the late-fee term. Absent some direction from landlords, however, tenants in defendant's circumstance cannot be expected to appreciate what, if any, recourse is available to them, or what constitutes a legally-acceptable method of challenging the reasonableness of a renewal term.

Moreover, it was not until she first refused to pay the fee assessed in September that defendant's nonacceptance of the term became relevant and operative. We conclude that because she was not invited to sign a lease or negotiate the terms contained in the "Notice of Rent Increase," defendant's refusal to pay the late fees each of the four times they were assessed by plaintiff constituted a valid refusal to accept the lease change within the meaning of *N.J.S.A.* 2A:18–61.1(i). Had this been a case in which defendant had been provided some formal means to express her refusal to accept the late-fee term or in which she had paid a late fee at certain times but not at others, we might be inclined to view defendant's assertion of nonacceptance of the term less indulgently.

## IV

■ Finally, defendant contends that the change in the "Notice of Rent Increase" imposing late fees whenever rent is not paid by mail and by the fifth of the month was unreasonable in light of her circumstances, and that the trial court should not have upheld plaintiff's late-fee provision without first considering its reasonableness. In fact, the trial transcript indicates that defendant raised the question of the late fee's reasonableness and that the trial court found the change reasonable, a conclusion affirmed by the Appellate Division. We disagree with that determination.

In interpreting the reasonableness of a lease change, courts have properly looked to the circumstances of the case and to the interests of both the landlord and the tenant. *See Young v. Savinon, supra,* 201 *N.J.Super.* at 6–7; *Royal Assocs. v. Concannon, supra,* 200 *N.J.Super.* at 90–91; *Housing Auth. of City of E. Orange v. Mishoe,* 201 *N.J.Super.* 352, 359 (App.Div.1985). *Contra Terhune Courts v. Sgambati, supra,* 163 *N.J.Super.* at 222. "Each case must be governed by its own facts. The result must be just and fair to the landlord as well as the tenant." *Calhabeu v. Rivera, supra,* 217 *N.J.Super.* at 555 (quoting *Berzito v. Gambino,* 63 *N.J.* 460, 470 (1973)); *cf. R & D Realty v. Shields, supra,* 196 *N.J.Super.* at 220 (reasonableness of lease change determined by reference to applicable public housing statute).

At oral argument defendant did not complain of the imposition of a rent deadline; rather, the difficulty here lay in the timing of that deadline. But for the landlord's insistence that the rent be paid by mail on the fifth of each month and not on some date shortly thereafter that defendant, making her best efforts, could have met, neither party would have had a problem.

We do not mean to suggest that it is at all unreasonable for landlords to impose late fees. However, given that knowledge of their tenants' circumstances is assumed, *see Carteret Prop-*

*erties v. Variety Donuts, Inc.*, 49 *N.J.* 116, 127–28 (1967), landlords and owners must take the totality of those circumstances into account when making changes in the material terms or conditions of leases, and must avoid the imposition of changes that will cause undue hardship to tenants attempting in good faith to meet their rent obligations. Here, for example, defendant's payments were always mailed by the third of the month, but received sometimes as late as the ninth. The landlord could well have avoided difficulty with defendant by setting a deadline more realistically tailored to the needs of defendant, who was probably not plaintiff's only tenant receiving public assistance. By imposing a late fee on the fifth of the month, a deadline defendant was plainly incapable of meeting regularly without allowance for payment by hand, the landlord effectively increased defendant's rent by the amount of the penalty fee.

It cannot be assumed that a lease change was reasonable or that an unreasonable change was consented to merely because it was included in a notice of rent increase ratified by continued possession of the leasehold estate. Thus in reviewing cases founded on challenges to lease changes, it will be important for trial courts both to examine the manner by which the lease changes were accomplished and to weigh the arguments supporting the lease changes as against tenants' claims of hardship. The trial court should make detailed factual findings and relate them to the applicable law. *C.F. Seabrook v. Beck*, 174 *N.J.Super.* 577, 595 (App.Div.1980).

Judgment reversed. The cause is remanded to the Law Division for entry there of judgment for defendant.

*For affirmance and remandment*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*Opposed*—None.