943 A.2d 202 (2007)
399 N.J. Super. 130
James GAMBLE, Plaintiff
v.
David CONNOLLY and Connolly Properties, Inc., Defendants.
Docket No.: DC-6838-07
Superior Court of New Jersey, Civil Division, Special Civil Part Essex County.
Decided October 30, 2007.
*205 Evans C. Anyanwu, Newark, for plaintiff.
Anne P. Ward, Newark, for defendants.
PETER V. RYAN, J.S.C.
This matter comes before the court by a complaint filed by the plaintiff, James Gamble ("Gamble") demanding payment of double the security deposit, full cost for this action, and reasonable attorney's fees pursuant to N.J.S.A. 46:8-21.1. The defendants, David Connolly and Connolly Properties ("Connolly"), have responded by denying the allegations in an answer and counterclaim.[1]N.J.S.A. 46:8-21.1 reads in relevant part:
Within thirty days after the termination of the tenant's lease or licensee's agreement, the owner or lessee shall return by personal delivery, registered or certified mail the sum so deposited plus the tenant's portion of the interest or earnings accumulated thereon. . . . In any action by a tenant, licensee, executor, administrator or surviving spouse, or other person acting on behalf of a tenant, licensee, executor, administrator or surviving souse, for the return of moneys due under this section, the court upon finding for the tenant, licensee, executor, administrator or surviving spouse shall award recovery of double the amount of said moneys, together with full costs of any action and, in the court's discretion, reasonable attorney's fees.
The Special Civil Part is vested with jurisdiction to dispose, in one action, all disputes relating to the amount to be returned to tenants on security deposits, including the determination of the propriety of a deduction made by the landlord. N.J.S.A. 46:8-21.4; Melendy v. Woodbridge Gardens, Inc., 131 N.J.Super. 473, 476, 330 A.2d 596 (App.Div.1974).
David Connolly is the principal owner of Connolly Properties, Inc., a real estate company in the business of renting housing units, which owns and operates the property at 243 South Harrison Street. Gamble was the lessee of apartment 5D at that location on or about October of 2002. *206 He had an executed written lease with the previous proprietor, but never had a lease in written form with Connolly. No evidence has been presented to suggest or demonstrate that Connolly or Gamble engaged in any negotiations to reach a new lease agreement, and neither party disputes that Gamble was in a "hold-over" status.
In three successive years, 2004 to 2006, Connolly forwarded to the plaintiff a "notice to quit and lease renewal"; the most recent and the subject of this litigation occurred on September 20, 2006. The notice reads as follows:
In accordance with the terms of the lease and the laws of the state of New Jersey, your lease expires as of 11/30/06 and it is demanded that you quit, surrender, and deliver possession of 243 South Harrison Street, Apt. #5D, no later than the above lease expiration date
Term: 12/01/06 to 11/30/07
Monthly Rent: $895.00 Annual Rent $10740.00
Original Security Deposit: $1242.00 New Security Deposit: $1342.50
Your landlord, David Connolly, is willing to enter into an extension of your present lease for one year with the following changes:
The monthly rent, which commences 12/01/06, shall be the sum of $895.00. Late charge terms are as stated in the lease. Returned check charges, cost of collection, security deposit due, and damage expenses will be chargeable as additional rent. Please remit $100.50 by separate check or money order payable to Connolly Properties, Inc., to meet your security deposit requirement.
If you choose to stay, you do not have to do anything. Your lease will automatically be extended for an additional year at the rate of $895.00 per month effective 12/01/06. If Tenant breaks lease during the coming lease term, Tenant will be charged double rent retroactively from the beginning date of this lease renewal. If you choose to move and not notify us at least 60 days prior to your lease renewal date, you could forfeit all or part of your security deposit.
For the years 2004 and 2005, the plaintiff tendered the amount owed for rent, which was increased annually.
On July 1, 2006, Gamble forwarded correspondence to Connolly stating his intention to vacate the premises on October 31, 2006, and declared: "I am in compliance for a sixty day notice and I am applying for my return of my security deposit in the account of more than $1100.00 from which I submitted for the apartment." In an undated letter, clearly beyond thirty days after the plaintiff removed himself from the living quarters, Connolly, on a letter-head containing the East Orange site, advised Gamble that the security deposit of $1242 was being reduced by the monies owed in rent of $1154 and the "amount due to resident is $88.00."
The position advanced by Connolly is that Gamble's lease was for one year and terminated on November 30, 2006, as per the notice of renewal for 2005, and payment was, therefore, due for the month of November. This contention is based on defendant's assumption that the plaintiffs continued occupancy of the dwelling and remittance of the increased rental payments "constitutes unequivocal acceptance of all the terms of the renewals." The plaintiff challenges such an assertion and argues that (a) his tenancy was month-to-month, and (b) his notice to vacate was within the permissible time limits.
*207 The pivotal question is whether the tenant is bound by a renewal lease of one year, or whether his status as a hold-over-tenant resulted in a lease period thirty (30) days, month-to-month, pursuant to N.J.S.A. 46:8-10.
It is a rudimentary proposition that the function of a court is to enforce a lease as it is written, absent some superior contravening public policy. Marini v. Ireland, 56 N.J. 130, 143, 265 A.2d 526 (1970); Mury v. Tublitz, 151 N.J.Super. 39, 44, 376 A.2d 547 (App.Div.1977). In the absence of such a policy, the parties are free to define the terms of the lease agreement. Housing Auth. and Urban Redevelopment Agency v. Taylor, 171 N.J. 580, 586, 796 A.2d 193 (2002); Fargo Realty, Inc. v. Harris, 173 N.J.Super. 262, 265-66, 414 A.2d 256 (App.Div.1980).
Under the facts of the case sub judice, the plaintiff avers that the continuation or renewal of the lease was effectuated without written submissions, but rather by remaining in a hold-over tenant status. As a consequence, the tenant avers that N.J.S.A. 46:8-10 controls and that the statutory prescription is that the duration of a lease is limited to thirty days. N.J.S.A. 46:8-10 reads:
Whenever a tenant whose original terms of leasing shall be for a period of one month or longer, shall hold over or remain in possession of the demised premises beyond the term of the letting, the tenancy created by or resulting from acceptance of rent by the landlord shall be a tenancy from month to month in the absence of any agreement to the contrary.
See Maglies v. Estate of Guy, 386 N.J.Super. 449, 453, 901 A.2d 971 (App.Div.), certif. granted, 188 N.J. 492, 909 A.2d 726 (2006); Tower Mgmt. Corp. v. Podesta, 226 N.J.Super. 300, 302, 544 A.2d 389 (App. Div.1988). Further, a month-to-month tenancy is terminated by the giving of one month's notice to quit, which notice shall be deemed to be sufficient. N.J.S.A. 2A:18-56; Center Ave. Realty v. Smith, 264 N.J.Super. 344, 350, 624 A.2d 996 (App.Div.1993).
A month-to-month tenancy is a continual relationship that remains unabated at its original terms until terminated by one of the parties. Harry's Village Inc. v. Egg Harbor Twp., 89 N.J. 576, 583, 446 A.2d 862 (1982); J.M.J. New Jersey Props., Inc. v. Khuzam, 365 N.J.Super. 325, 332, 839 A.2d 102 (2004). Agreements between the landlord and tenant need not be in writing or even expressed in words. Enforceable agreements also may be implied in fact from the conduct of the parties. Young v. Savinon, 201 N.J.Super. 1, 7-8, 492 A.2d 385 (App.Div.1985) (citing St. Paul Fire & Marine Co. v. Indem. Ins. of N. Am., 32 N.J. 17, 23, 158 A.2d 825 (I960)). In a month-to-month tenancy where there is no written lease, tenants impliedly consent to rent increases by remaining in possession of the estate after receiving a notice to quit and notice of a rent increase. 447 Assocs. v. Miranda, 115 N.J. 522, 532, 559 A.2d 1362 (1989); Harry's Village Inc. v. Egg Harbor Twp., supra, 89 N.J. at 583, 446 A.2d 862.
The question remains, however, whether in accepting some of the lease changes imposed by the landlord, the tenant must be held to have accepted all such changes, thereby precluding subsequent challenges to an undesirable lease change. As expressed by Mr. Justice Clifford for a unanimous Court  "We think not." 447 Assocs. v. Miranda, supra, 115 N.J. at 532, 559 A.2d 1362.
"We therefore do not understand the statute to mean that a tenant must demonstrably refuse to accept a lease term, reasonable or otherwise, at the *208 precise time the renewed tenancy begins. Put differently, acceptance of a renewal lease should not bar tenants from later challenging the reasonableness of a term contained therein." Ibid.

It cannot be assumed that a lease change was reasonable or that an unreasonable change was consented to merely because it was included in a notice of rent increase ratified by continued possession of the leasehold estate. Courts must examine the manner by which the lease changes were accomplished and weigh the arguments supporting the lease changes as against tenants' claims of hardship. Id. at 535, 559 A.2d 1362.
In recent years, New Jersey and other jurisdictions have shown an increasing tendency to construe landlord-tenant law in accordance with conventional doctrines and principles of contract law. McGwire v. City of Jersey City, 125 N.J. 310, 321, 593 A.2d 309 (1991) (citing Berzito v. Gambino, 63 N.J. 460, 468-69, 308 A.2d 17 (1973) (implied warranty of habitability and covenant to pay rent seen as mutually dependent); Marini v. Ireland, 56 N.J. 130, 141-47, 265 A.2d 526 (1970) (landlord's implied covenant to make repairs and tenant's covenant to pay rent construed as mutually dependent); Reste Realty Corp. v. Cooper, 53 N.J. 444, 251 A.2d 268 (1969) (recognizing implied warranty against latent defects and of fitness of premises for lease purposes)). To be sure, the terms of a contract must be definite and certain so that a court may order with precision what the parties must do. Graziano v. Grant, 326 N.J.Super. 328, 339, 741 A.2d 156 (App.Div.1999) (citing Barry M. Dechtman v. Sidpaul Corp., 89 N.J. 547, 552, 446 A.2d 518, 521 (1982)).
If an agreement is reached through an offer and acceptance and is sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonable certainty, a contract arises. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992). If the parties agree on essential terms and further manifest an intention to be bound by those terms, they have created an enforceable contract. Ibid. On the other hand, if the parties do not agree to one or more essential terms, the agreement is unenforceable. Ibid. Stated another way, there must be an unqualified acceptance of the offer for there to be a contract. Id. at 435-36, 608 A.2d 280. Acceptance may come either from words, creating an express contract, or from conduct, creating a contract implied-in-fact. Id. at 436, 608 A.2d 280. Silence alone does not ordinarily manifest acceptance. "Silence does not ordinarily manifest assent, but the relationships between the parties or other circumstances may justify the offerors expecting a reply and, therefore assuming that silence indicates assent to the proposal." Ibid. Moreover, "when an offeree accepts the offeror's services without expressing any objections to the offer's essential terms, the offeree has manifested assent to those terms." Ibid.; Graziano v. Grant, supra, 326 N.J.Super. at 339-10, 741 A.2d. 156.
In the context of landlord tenant law, the actions of both parties are closely scrutinized to monitor the fairness of any accord. Given the means by which the changes were attained, the distant and seemingly adversary relationship of the parties, and the plain disadvantage and hardship imposed on the plaintiff Gamble, the court is constrained to conclude that the new terms[2] were not accepted by *209 Gamble. Moreover, the totality of the circumstances would not cause a reasonable man in the position of the landlord to anticipate a reply nor assume that no response is indicative of acceptance. Clearly, Gamble's payment of the increased rent and continued occupancy can be and is construed, consistent with the case law, as agreeing solely to the new rental amount. See 447 Assocs. v. Miranda, supra, 115 N.J. at 532, 559 A.2d 1362. The landlord Connolly forwarded a contract which included, for all intents and purposes, a "take it or leave it" proposition. Compelled to pay the rent for continued occupancy, Gamble was not required to accept the added material changes including the lease extension of one year. He was confronted with the classic "Hobson's choice."[3] He elected to stay temporarily and seek housing elsewhere, but understood his monthly financial liability.
Assuming, arguendo, there was a degree of acceptance on the part of Gamble and an agreement was consummated, the contract would be equally inefficacious. Such a contract must be deemed a contract of adhesion, which is defined as "a contract where one party must accept or reject the contract." Gras v. Assocs. First Capital Corp., 346 N.J.Super. 42, 48, 786 A.2d 886 (App.Div.2001). (quoting Vasquez v. Glassboro Serv. Ass'n, Inc., 83 N.J. 86, 104, 415 A.2d 1156 (1980)). The inequality in bargaining power of landlords and tenants was noted in Marini v. Ireland, supra, and led the Court to comment that "lease agreements are frequently contracts of adhesion." Trentacost v. Brussel, 82 N.J. 214, 226, 412 A.2d 436 (1980). This imbalance stems from the "housing shortage," Kuzmiak v. Brookchester, 33 N.J.Super. 575, 578, 111 A.2d 425 (App.Div.1955), which is omnipresent in urban areas such as Essex County. A contract where one party, as here, must accept or reject the contract does not result from the consent of that party. It is a contract of adhesion. Vasquez, supra, 83 N.J. at 104, 415 A.2d 1156 (citing Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 390, 161 A.2d 69 (1960)); McNeill v. Estate of Lachmann, 285 N.J.Super. 212, 218, 666 A.2d 996 (App. Div.1995).
It is instructive to consider the Court's approach to determining enforceability of contracts alleged to be contracts of adhesion, that is, contracts "presented on a take-it-or-leave-it basis, commonly in standardized printed form, without opportunity of the `adhering' party to negotiate except perhaps on a few particulars." Exit A Plus Realty v. Zuniga, 395 N.J.Super. 655, 665, 930 A.2d 491 (App.Div.2007) (citing Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681, cert. denied, 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992)). The Court has observed that "the determination that a contract is one of adhesion is the beginning, not the end, of the inquiry into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations." Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 15, 912 A.2d 88 (2006) (quoting Rudbart, supra, 127 N.J. at 354, 605 A.2d 681). "A sharpened inquiry concerning unconscionability is necessary when a contract of adhesion is involved." Ibid. Relevant factors deserving of attention when a court is asked to declare a *210 contract of adhesion unenforceable were articulated in Rudbart:
In determining whether to enforce the terms of a contract of adhesion, we look not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the "adhering" party, and (4) the public interests affected by the contract.
[Rudbart, supra, 127 N.J. at 356, 605 A.2d 681.]
See also Muhammad, supra, 189 N.J. at 15-16, 912 A.2d 88; Delta Funding Corp. v. Harris, 189 N.J. 28, 40, 912 A.2d 104 (2006). The point is that the decision whether a particular agreement or provision therein is unenforceable is fact-sensitive and must be determined on a case-by-case basis. Exit A Plus Realty v. Zuniga, supra, 395 N.J.Super. at 666, 930 A.2d 491 (citing Martindale v. Sandvik, Inc., 173 N.J. 76, 90, 800 A.2d 872 (2002)).
Applying the aforementioned factors to the facts presented here leads to the conclusion that the contract is unenforceable. On each score, the tenant Gamble was in an unfavorable situation and unable to counter the proffered terms. Faced with a "take-it-or-leave it" circumstance, he remained in the apartment; a decision which inured to his detriment. Thus, the contract is unenforceable because its terms are "manifestly unfair or oppressive and are dictated by a dominant party." Kuzmiak v. Brookchester, supra, 33 N.J.Super. at 585, 111 A.2d 425.
"It is equally well recognized that our courts may refuse to enforce contracts that are unconscionable or violate public policy." Saxon Constr. & Mgmt. Corp. v. Masterclean of N. Carolina, 273 N.J.Super. 231, 236, 641 A.2d 1056 (App.Div.), certif. denied, 137 N.J. 314, 645 A.2d 142 (1994). Public policy eludes precise definition and may have diverse meanings in different contexts. Henningsen v. Bloomfield Motors, Inc., supra, 32 N.J. at 403, 161 A.2d 69. The sources of public policy include federal and state legislation and judicial decisions. Vasquez v. Glassbaro Service Ass'n., supra, 83 N.J. at 98, 415 A.2d 1156 (citing Allen v. Commercial Cas. Ins. Co., 131 N.J.L. 475, 478, 37 A.2d 37 (E. & A.1944)). Courts in New Jersey have refused to enforce contracts that violate the public policy of the State. Houston Petroleum Co. v. Automotive Prods. Credit Ass'n., 9 N.J. 122, 130, 87 A.2d 319 (1952). No contract can be sustained if it is inconsistent with the public interest or detrimental to the public good. Driscoll v. Burlington-Bristol Bridge Co., 10 N.J.Super. 545, 575, 77 A.2d 255 (Ch.Div.1950), modified, 8 N.J. 433, 86 A.2d 201, cert. denied, 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952). Contracts have been declared invalid because they violate statutes, promote crime, interfere with the administration of justice, encourage divorce, violate public morality or restrain trade. Vasquez, supra, 83 N.J. at 98-99, 415 A.2d 1156. Here the contract in question transgresses a statute, N.J.S.A. 46:8-10, and is, therefore, disruptive of public policy, at odds with the public interest and deleterious to the common good.
Residential tenants are viewed as a special class of individuals for whom the legislature has articulated a need for special protection; offending contractual provisions are in direct violation' of this protective scheme. Indeed, N.J.S.A. 46:8-10 is as much a part of the protective umbrella as the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to .12 (1974), "the purpose of which is to protect residential tenants from the effects of what the legislature has deemed to be a severe shortage of rental housing in this state." Franklin *211 Tower One v. N.M., 157 N.J. 602, 614, 725 A.2d 1104 (1999). The month-to-month tenancy statute has a concomitant salutary objective-to avoid arbitrary and capricious actions of a landlord in extending a lease unilaterally and, thereafter, holding the tenant financially liable for an alleged breach when he/she exits the abode prior to the one year term end date. The defendant's transparent attempt to collect monies under the circumstances detailed here represents a deviation from the public policy of this state by virtue of the non-observance of the statute, N.J.S.A. 46:8-10. As a result, the agreement, even if characterized as having a binding contractual effect, is void ab initio on public policy grounds.
For the reasons set forth, the court determines that Connolly has failed to comply with the thirty-day security deposit return rule as commanded by N.J.S.A 46:8-21.1, and is, therefore, liable to Gamble for double the amount of the security deposit, totaling $2,482, plus "full costs of court and reasonable attorney's fees."
So ordered.
NOTES
[1] The pleading labeled "counterclaim" does not, however, "contain a statement of facts on which the claim is based, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader claims entitlement." R. 4:5-2; In Re Contest of November 8, 2005 General Election, 388 N.J.Super. 663, 675, 909 A.2d 1199 (App.Div. 2006).
[2] Doubling the rent retroactively if the lease is "broken," extension of the lease to one year, sixty (60) day notice and forfeiture of the security deposit "if you choose to move and not notify us."
[3] Hobson's choice is defined as "take what is offered or nothing at all." Webster's New World College Dictionary page 678 (4th ed. 2004).