**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1096-19

FLEMINGTON SOUTH
GARDENS, INC.,

     Plaintiff-Respondent,

v.

JEFFREY MINTS,

     Defendant-Appellant.

_____

Submitted December 1, 2020– Decided February 11, 2021

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. LT-0230-19.

Jeffrey Mints, appellant pro se.

Gencarelli and Rimassa Law Firm, LLC, attorneys for respondent (Melissa M. Gencarelli, on the brief).

PER CURIAM

     In this landlord/tenant action, defendant Jeffrey Mints appeals from a September 9, 2019 order granting judgment of possession to plaintiff

Flemington South Gardens, Inc. and directing that a warrant of removal be issued, an October 15, 2019 order denying defendant's motion for a new trial, and an October 31, 2019 order denying his application to stay the warrant of removal. Because the judge's findings are supported by substantial credible evidence and any error was harmless, we affirm.

Defendant became plaintiff's tenant in 2015. In 2018, plaintiff filed an action for possession, contending that defendant was hoarding in his apartment in violation of the lease. The parties resolved that action on August 13, 2018, by entering a Consent to Enter Judgment (2018 agreement). In that document, defendant agreed to "allow the Landlord and bed bug exterminators access and entry to the Unit upon reasonable written notice of at least 48 hours in advance of same."

The parties entered into a new lease agreement for the term of December 1, 2018, to November 30, 2019. Paragraph 10 of the lease, entitled "RULES AND REGULATIONS," provided that "[t]enant will comply with all Rules and Regulations of the Apartment Complex as set by the Landlord." Paragraph 12, entitled "CARE OF THE APARTMENT," stated, among other things, that "[t]he [t]enant agrees to maintain the property in as good condition as it is at the start of this Lease except for normal wear and tear." Paragraph 21 of the lease,

A-1096-19

entitled "ENTRY BY LANDLORD," contained the following language: "[u]pon reasonable notice, the Landlord may enter the Apartment to provide services, inspect, repair, improve or show it."

After serving defendant with "Notice to Cease & Demand for Compliance & Inspection" notices, plaintiff advised defendant in an April 17, 2019 "Notice to Quit and Demand for Possession" that it was terminating the lease and to vacate the apartment on or before May 31, 2019. Plaintiff stated that it was terminating the lease because defendant had breached paragraphs 10, 12, and 21 of the lease and had violated the 2018 agreement and N.J.S.A. 2A:18-61.1(c), (d), and (e). Plaintiff detailed the bases for those assertions, including the hoarding condition of the apartment, the presence of bed bugs, and defendant's failure to allow plaintiff to enter the apartment.

On August 5, 2019, plaintiff filed this action for possession of the apartment. Plaintiff alleged that defendant continued to hoard and had denied access "on multiple occasions to inspect the unit to see if tenant is still hoarding and to treat bed bugs that continue to be present," violating paragraphs 10, 12, and 21 of the written lease, the 2018 agreement, and N.J.S.A. 2A:18-61.1 (c), (d), and (e). Plaintiff also asserted that it had served the appropriate notices.

A-1096-19

The trial was scheduled to take place on August 26, 2019. Defendant did not appear. The court entered default judgment and issued an order for possession and a warrant for removal. Defendant filed an order to show cause, asking the judge to vacate the order of possession, asserting that he had been unable to appear at trial because he was in an automobile accident. Plaintiff opposed the application, disputing the cause of the accident and defendant's purported inability to attend the trial.

On September 9, 2019, which was the return date of the order to show cause, the judge granted defendant's requested relief and vacated the default judgment after concluding defendant had established his contention that he was physically unable to attend the August 26, 2019 hearing. The judge suggested that the parties then proceed to try the case on its merits. Defendant did not object, and the parties tried the case that day.

Plaintiff called three witnesses: its property manager, its maintenance employee, and defendant's Veteran's Affairs housing case manager. The property manager testified that defendant had kept the apartment in an unacceptable "hoarding condition" since 2017. She noted that after the 2018 complaint, defendant addressed the issue and plaintiff agreed to withdraw its complaint, but defendant "immediately went back" to hoarding. The property

4 <span>A-1096-19</span>

manager also testified that defendant had breached the lease multiple times by refusing plaintiff entry into the apartment, such as when he denied entry to treat a severe bedbug infestation or to allow the fire inspector to conduct an inspection, even though he had been given ample notice. The property manager submitted photographs taken in 2019 of bed bugs left in the common laundry room after defendant had done laundry. When asked by the judge, defendant stated that he did not object to the admission of those photographs into evidence. The property manager also submitted photographs showing the condition of the property on August 30, 2018, when she inspected the apartment pursuant to the 2018 agreement. When the judge asked defendant if he objected to the admission of those photographs, he stated that they were "misleading," in that they showed a "work in progress, not a condition of general maintenance."

The maintenance employee testified about observing in 2019 the hoarding conditions in the apartment, the presence of bed bugs, photographs he had taken in August 2019 of bed bugs defendant left in the laundry room, and defendant's refusal to allow entry into the apartment. Defendant's case manager confirmed the "hoarding and bed bug issues" and stated defendant had refused to allow her into the apartment.

A-1096-19

Defendant was given an opportunity to cross-examine those witnesses and he testified, questioning the definition of hoarder and denying that he had been uncooperative. He did not deny the existence of a bed bug problem in 2019.[1] He also stated that the "circumstances are highly suspicious." The judge acknowledged his assertion: "I'm hearing you, and I understand you're – basically, you're saying that they wanted you out of there. It's a setup. That's what you seem to be saying." Defendant sought to introduce a November 11, 2016 "Housing Discrimination Complaint" and he referenced a "consent decree," contending he had "forced them to agree to something that they had been adamantly denying for a long time." The judge again acknowledged his assertion, "[s]o you're saying they acted in bad faith. I understand that."

Defendant testified about the contents of the "consent decree," stating plaintiff would have to notify him of first-floor vacancies and he would be allowed to move into an available first-floor apartment if he wanted it. He acknowledged that he had been shown an apartment but had rejected it, and he seemed to want to explain why he had rejected it, prompting plaintiff's counsel to object. The judge stated: "The only defense you have is whether or not, A,

---

[1] On appeal, defendant concedes the existence of a bed-bug issue since the beginning of late 2018 or early 2019.

A-1096-19

there were bed bugs that you didn't allow them to treat, and, B, whether or not you basically hoarded all these items in the apartment . . . The main thing I'm concerned about are really the bed bugs."

In an oral decision given after the trial, the judge held the credible testimony and photographs had established that defendant had engaged in hoarding, had a "serious . . . significant bed bug problem," and had refused reasonable access. He found defendant's testimony not credible. The judge determined that the "landlord was more than sympathetic to [defendant's] situation. [Defendant] breached the terms of his lease. There's no doubt in my mind as to that." The judge concluded that defendant had breached the 2018 agreement and paragraphs 10, 12, and 21 of the lease agreement and that those breaches constituted grounds for violations of N.J.S.A. 2A:18-61.1(c), (d), and (e). That day, the judge issued an order granting plaintiff possession and directing a warrant of removal to issue on October 17, 2019.

Defendant moved for a new trial. He argued that he did not have sufficient notice to present a proper defense. He disputed the property manager's testimony and asserted that the photographs were not relevant because they were taken before the new lease. After hearing oral argument, the judge in a detailed oral opinion denied the motion, finding that defendant had failed to meet the

A-1096-19

standard for a new trial under Rule 4:49-1 and repeating his prior findings that defendant had breached the lease and violated the 2018 agreement.  In his October 15, 2019 order denying defendant's motion, the judge also extended the issuance of the warrant of removal to October 25, 2019.

Defendant moved to stay the warrant of removal.  The judge denied that motion on October 31, 2019.  Defendant moved for a stay pending appeal.  The judge denied that motion, finding it to be without merit.  Defendant filed an appeal and an application for permission to file an emergent motion for a stay. We denied that application.

On appeal, defendant contends that the judge erred in refusing to allow him to present a defense; conducting the trial without proper notice; denying the motion for a new trial based on a misinterpretation of an unpublished case; making incorrect factual findings and relying on photographs taken in 2018; and abusing his discretion in denying a hardship stay.  After considering our standard of review and the requirements of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1 to -61.12, we reject defendant's claims of procedural, fact-finding, and legal errors.

A ruling on a complaint for possession is reviewed for abuse of discretion. Community Realty Mgmt. v. Harris, 155 N.J. 212, 236 (1998).  Accordingly,

our review "does not consist of weighing evidence anew and making independent factual findings" but "determin[ing] whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999).

A judge's factual findings made following a bench trial are accorded deference and will be left undisturbed as long as they are supported by substantial credible evidence. Reilly v. Weiss, 406 N.J. Super. 71, 77 (App. Div. 2009); see also State v. Barone, 147 N.J. 599, 615 (1997) (noting appellate courts "do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence"). No deference is owed to the trial court's interpretation of law or legal consequences flowing from its findings of fact. D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"The standard of review on appeal from decisions on motions for a new trial is the same as that governing the trial judge – whether there was a miscarriage of justice under the law." Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011); see also Hayes v. Delamotte, 231 N.J. 373, 386 (2018). "[A] 'miscarriage of justice' can arise when there is a 'manifest lack of inherently credible evidence to support the finding,' when there has been an

A-1096-19

'obvious overlooking or under-valuation of crucial evidence,' or when the case culminates in 'a clearly unjust result.'" Hayes, 231 N.J. at 386 (quoting Risko, 206 N.J. at 521-22). In an appeal of a decision on a motion for a new trial, we defer to "the opportunity of the [factfinder] to pass upon the credibility of the witnesses," R. 4:49-1(a), and to the trial judge's "intangible 'feel of the case,'" Dolson v. Anastasia, 55 N.J. 2, 6 (1969); see also Risko, 206 N.J. at 522.

New Jersey permits summary actions for the possession of real property where an occupant "has no colorable claim of title or possession." R. 6:1-2(a)(4). The Anti-Eviction Act limits the grounds on which tenants can be evicted. Green v. Morgan Props., 215 N.J. 431, 447 (2013).

The Act "was designed to protect residential tenants against unfair and arbitrary evictions." 447 Assocs. v. Miranda, 115 N.J. 522, 528 (1989). Consequently, it provides that a tenant cannot be evicted in a summary-dispossession proceeding unless a landlord provides sufficient notice and establishes an enumerated ground for eviction. Maglies v. Estate of Guy, 193 N.J. 108, 120-21 (2007). For a tenant protected by the Act, "the effective term of the [tenancy] is for as long as the tenant wishes to remain, provided he pays the rent . . . and provided there is no other statutory cause for eviction under [the Act]." Center Ave. Realty, Inc. v. Smith, 264 N.J. Super. 344, 350 (App. Div.

10

1993); see also Maglies, 193 N.J. at 121. Where tenancy has been established, the landlord "has the burden of proof regarding any disputed fact relevant to 'good cause' grounds for eviction." Hale v. Farrakhan, 390 N.J. Super. 335, 341 (App. Div. 2007).

N.J.S.A. 2A:42-10.10 provides that a landlord cannot institute an action to recover possession of a premises "[a]s a reprisal for the tenant's efforts to secure or enforce any rights" or "for the tenant's good faith complaint to a governmental authority of the landlord's alleged violation of any health or safety law, regulation, code or ordinance, or State law or regulation which has as its objective the regulation of premises used for dwelling purposes." N.J.S.A. 2A:42-10.12(a) creates a rebuttable presumption of retaliation if a landlord institutes an action against a tenant after the tenant "attempts to secure or enforce any rights . . . under the laws of the State of New Jersey, or its governmental subdivisions." A landlord can overcome that presumption "only by showing that the eviction proceeding was commenced independently of any consideration of protected activities the tenant may have engaged in." Les Gertrude Assocs. v. Walko, 262 N.J. Super. 544, 550 (App. Div. 1993). See also Fromet Props., Inc. v. Buel, 294 N.J. Super. 601, 618 (App. Div. 1996) (finding that presumption is rebutted "when the landlord demonstrates a non-retaliatory motive").

11

On appeal, defendant faults the court for proceeding with trial on September 9, 2019. After granting the relief defendant requested and vacating default judgment that had been entered for defendant's failure to appear on the previous trial date, the judge suggested that the parties proceed to trial. Defendant did not object. He did not tell the judge he needed more time to prepare or that he had retained counsel or wanted to retain counsel. "The failure to object . . . deprives the court of an opportunity to take curative action." State v. Frost, 158 N.J. 76, 84 (1999); see also State v. Cordero, 438 N.J. Super. 472, 490 (App. Div. 2014). Defendant has not identified any evidence he was not able to present or argument he was unable to make because the trial took place on September 9, 2019. We see no abuse of discretion in proceeding with the trial.

Defendant criticizes the judge for factual findings he made. Those factual findings were based on the judge's credibility determinations. See Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (noting reviewing courts "are not in a good position to judge credibility and ordinarily should not make new credibility findings"). Even if we were to set aside the 2018 photographs about which defendant complains, the credible and consistent testimony of the property manager, the maintenance employee, and

A-1096-19

defendant's case manager and the 2019 photographs of bed bugs from defendant's apartment constitute substantial evidence that defendant had engaged in hoarding, had a significant bed-bug issue, and had refused plaintiff entry in breach of the lease and the 2018 agreement. We see no reason to disturb the judge's well-supported findings. See Reilly, 406 N.J. Super. at 77.

Defendant also faults the judge for his legal conclusions that his hoarding and bed-bug situation and failure to allow access constituted a breach of the 2018 agreement and violations of N.J.S.A. 2A:18-61.1(c), (d), and (e). Contrary to defendant's suggestion, the 2018 agreement does not contain a time limitation for its duration. See Quinn v. Quinn, 225 N.J. 34, 45 (2016) (finding "parties cannot expect a court to present to them a contract better than or different from the agreement they struck between themselves"). Moreover, the agreement's right-of-entry provision is reflected in paragraph 21 of the parties' subsequent lease agreement. Defendant questions the judge's definition of hoarding as "extreme clutter." We see no error in the judge's use of that definition. Whatever definition he used, based on the credible evidence before him regarding the condition of the apartment, the bed-bug issue, and his refusal to allow entry, the judge did not err in finding violations of N.J.S.A. 2A:18-61.1(c), (d), and (e).

A-1096-19

Defendant asserts that the judge erred in refusing to allow him to present a defense of retaliation. The judge may have erred in not recognizing defendant's allegation about "highly suspicious" circumstances as a possible retaliation defense. We find that error to be harmless. See R. 2:10-2 ("[a]ny error or omission shall be disregarded . . . unless it is of such a nature as to have been clearly capable of producing an unjust result"); see also State v. Bass, 224 N.J. 285, 308 (2016). Defendant was able to present the defense. The judge allowed and heard defendant's testimony regarding his complaint and the "consent decree" and his argument regarding the purportedly suspicious circumstances. He considered plaintiff's behavior towards defendant and found it to be "more than sympathetic" rather than retaliatory. Plaintiff presented evidence that it had commenced this action independent of any considerations regarding defendant's 2016 resolved complaint. See Les Gertrude Assocs., 262 N.J. Super. at 550. The evidence that defendant had a hoarding and bed-bug issue, had refused entry to plaintiff, and had breached the lease and the 2018 agreement and violated N.J.S.A. 2A:18-61.1(c), (d), and (e) was substantial – enough to overcome any presumption of retaliation.

Defendant argues that the judge erred in denying the motion for a new trial generally and for misinterpreting an unpublished case. Rule 1:36-3 barred

the judge from giving that case any precedential effect. Thus, defendant's argument about that decision's importance has no merit.

Finally, defendant contends that the judge abused his discretion in denying his application for a "hardship" stay in the October 31, 2019 order. Defendant makes this argument in his brief, although he did not identify the October 31, 2019 order as an order he appeals in his notice of appeal or case information statement. See R. 2:5-1(e)(2) (requiring that "[t]he appellant's Case Information Statement shall have annexed to it a copy of the final judgment, order, or agency decision appealed from"). He also did not request and did not provide us with a copy of the transcript of the October 31, 2019 proceeding. In the interest of completeness, we nevertheless address his argument. When defendant failed to appear for trial on August 26, 2019, the court issued an order for possession and a warrant of removal. After vacating that order and conducting the trial on September 9, 2019, the judge issued an order setting the new date for the warrant of removal more than five weeks later. In his order denying defendant's motion for a new trial, the judge again moved the date for the warrant of removal to October 25, 2019, giving defendant more than an additional week. Given that procedural history, we see no abuse of discretion in the judge's denial of defendant's application for a stay.

A-1096-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1096-19